UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-185-RJC-DCK

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, )<br>United States Department of Labor, )<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　v. )<br>　　　　　　　　　　　　　　　　　　)<br>JOHN W. ULERY, COMCO SIGNS, INC., )<br>COMCO SIGNS, INC. 401(k) PLAN, and )<br>COMCO SIGNS, INC. GROUP HEALTH )<br>PLAN, )<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on the Motion of Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Plaintiff"), for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which he filed on June 5, 2013. (Doc. No. 9). Defendants John W. Ulery and Comco Signs, Inc. ("Defendants") have failed to make an appearance in the case and have not opposed the Motion for Default Judgment, and the time for doing so has expired.

**I.　　BACKGROUND**

　　A.　　Procedural Background

Plaintiff commenced this lawsuit by filing his Complaint on April 15, 2014. (Doc. No. 1). The Summonses were issued on April 16, 2014. (Doc. No. 2). On August 5, 2014, Plaintiff filed four Affidavits of Service indicating that all four defendants had been served by a process server on July 21, 2014. (Doc. Nos. 3 to 6). Defendants failed to answer or otherwise defend the

action within the time permitted by the Federal Rules of Civil Procedure. Therefore, Plaintiff filed a Motion for Entry of Default on November 12, 2014, (Doc. No. 7), and the Clerk of Court entered Defendants' default on November 19, 2014, (Doc. No. 8). Plaintiff filed his Motion for Default Judgment, (Doc. No. 9), on March 25, 2015, along with an Affidavit in Support of the Motion from Jennifer Donald, Senior Investigator at the Atlanta Regional Office of the Employee Benefits Security Administration of the United States Department of Labor, (Doc. No. 9-1).

B. Factual Background

Because of their default in this matter, Defendants are deemed to have admitted those well-pleaded facts alleged in the Complaint that are material to Plaintiff's claims against them. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Accordingly, the factual summary below is consistent with that alleged in Plaintiff's Complaint.

Plaintiff filed this action against Defendants pursuant to Sections 502(a)(2) and 502(a)(5), 29 U.S.C. §§ 1132(a)(2) and (a)(5), of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq., ("ERISA"). Plaintiff seeks to enjoin acts and practices by Defendants that violated the provisions of Title I of ERISA with respect to the Comco Signs, Inc. 401(k) Plan and the Comco Signs, Inc. Group Health Plan (the "Plans"). This Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

The Comco Signs, Inc. 401(k) Plan ("the 401(k) Plan") and the Comco Signs, Inc. Group Health Plan ("the Group Health Plan") are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), subject to 29 U.S.C. § 1003(a), and are joined as party

defendants herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to ensure that complete relief may be granted. (Id. ¶¶ 3–4). John W. Ulery ("Ulery"), is currently acting, or at relevant times has acted, as an administrator and fiduciary of the 401(k) Plan and of the Group Health Plan, and as such is, or at relevant times has been, a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Further, Ulery is designated in the 401(k) Plan documents and the Group Health Plan documents as a fiduciary with the Plans pursuant to Section 405(c)(1) of ERISA, and is a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), (E), and (H), 29 U.S.C. § 1002(14)(A), (E), and (H). (Id. ¶5). Comco Signs, Inc. ("Comco"), is a North Carolina business entity and Plan Sponsor to the Plans, and was at all relevant times a fiduciary to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a party in interest to the Plans within the meaning of Section 3(14)(A) and (C) of ERISA, 29 U.S.C. § 1002(14)(A) and (C). (Id. ¶6).

The 401(k) Plan is a defined contribution Plan. As of December 31, 2012, the 401(k) Plan had not terminated, and it consisted of 12 participants and $271,590.89 in assets. (Id. ¶9). The Group Health Plan was a fully insured health benefit plan with Blue Cross Blue Shield of North Carolina ("BCBS"). The Group Health Plan benefits were provided by BCBS in exchange for premium payments received by Comco. It was established to provide employees with medical, dental, and life insurance benefits. Comco was responsible for collecting employee and employer contributions and remitting those payments to BCBS. (Id. ¶10). Pursuant to the Annual Report Form 5500 for Plan year ending December 31, 2008, the fiduciaries failed to remit $26,270 in withheld employee contributions to the 401(k) Plan that were deducted from

employees' salaries within the relevant timeframe. Additionally, the 401(k) Plan reported late contributions for 2006 and 2007. (Id. ¶12). Further, Comco owed $35,329.90 in participant deferrals as of December 31, 2009. (Id. ¶13). The Plan Sponsor, Comco, filed for bankruptcy on April 30, 2010, and Ulery had the responsibility of terminating the 401(k) Plan and distributing the assets to the participants and beneficiaries. Ulery was the only fiduciary with the authority to make distributions; however, Ulery failed to do so and has taken no action to terminate the 401(k) Plan, even though participants have requested that he do so. (Id. ¶¶16, 17).

Wayne Sigmon ("Sigman") was appointed as the U.S. Bankruptcy Trustee for Comco on April 30, 2010. As Trustee, Sigmon was responsible for administering the Group Health Plan's and the 401(k) Plan's termination. Sigmon sought the Plans records from Ulery, but Sigmon was unable to obtain the necessary records. On July 14, 2010, Sigmon was granted authority to employ a CPA to administer the Plans. The CPA also sought records from Ulery but received only insufficient records, thereby prohibiting full administration and termination of the Plans. (Id. ¶¶18 to 20).

Group Health Plan participants were on the Comco payroll through April 18, 2010. Employees of Comco were permitted to participate in the Group Health Plan. Comco received at least three notices of past due premiums and impending cancellations from BCBS, in letters dated January 21, 2010, February 22, 2010, and March 22, 2010. Coverage with BCBS was cancelled for non-payment of premiums on February 28, 2010. Comco continued to withhold employee contributions but failed to remit those monies to BCBS from February 28, 2010, through April 18, 2010. The failure of Comco and Ulery to pay premiums resulted in $9,392.75 in claims that were processed, but not paid. As a result of Comco and Ulery's failure to pay

premiums for the Group Health Plan insurance coverage, and the resulting cancellation of the health insurance coverage for non-payment of premiums effective February 28, 2010, the health insurance claims that were processed but not paid amount to $9,392.75. (Id. ¶¶21 to 27).

Ulery and Comco failed to ensure that the Group Health Plan assets were collected and submitted to BCBS. Unremitted employee insurance premiums deducted from participants' paychecks are assets of the Group Health Plan within the meaning of ERISA. Ulery and Comco participated knowingly in or knowingly undertook to conceal acts or omissions by each other that they knew to be violations of ERISA. (Id. ¶¶28 to 30).

Comco's contract with BCBS required Comco to pay the rates due in order to receive the health plan benefits. Comco failed to pay the required rates from February 28, 2010, through April 18, 2010. Ulery had an obligation to enforce the terms of the Group Health Plan for the benefit of the participants, including payment of required premiums. Ulery was responsible for collecting the employer contributions and remitting those monies along with the employee contributions to BCBS. Ulery failed to collect and remit the employer contributions. (Id. ¶¶31 to 33).

## II.  LEGAL STANDARD

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides, in relevant part, that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Upon the entry of default, the defaulting party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan, 253 F.3d at 780 (quoting

Nishimatsu Const. Co., 515 F.2d at 1206); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law, and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (quoting Nishimatsu Const. Co., 515 F.2d at 1206). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780; 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2688 (3d ed. Supp. 2015) ("[L]iability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010). Nonetheless, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the Court finds that liability has been established, it must then determine damages. See Ryan, 253 F.3d at 780–81; Arista Records LLC v. Gaines, 635 F. Supp. 2d 414, 416–18 (E.D.N.C. 2009). The Court cannot accept factual allegations of damages as true; therefore, it must make an independent determination regarding damages. See Lawbaugh, 359 F. Supp. 2d at

422. The Court may rely on affidavits or documentary evidence in the record to determine the appropriate amount of damages. See Pope v. United States, 323 U.S. 1, 12 (1944); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

## III. DISCUSSION

### A. Liability

ERISA broadly prohibits fiduciaries from self-dealing with respect to plan assets or allowing a plan to engage in transactions involving parties in interest. 29 U.S.C. §§ 1104(a)(1)(A), 1106. The statute requires fiduciaries to act loyally, for the exclusive purpose of the plan beneficiaries, and to act prudently in discharging their fiduciary obligations. 29 U.S.C. § 1104(a).

The proscription against self-dealing transactions requires that a fiduciary shall not:

> (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b). These prohibitions are absolute. This section "creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction, section 1106(b) establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." Gilliam v. Edwards, 492 F. Supp. 1255, 1263 (D.N.J. 1980); see also Whitfield v. Tomasso, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988); Donovan v. Daugherty, 550 F. Supp. 390, 403 (S.D. Ala. 1982).

Section 1106 also proscribes transactions which constitute a direct or indirect transfer of plan assets to parties in interest. 29 U.S.C. § 1106(a)(1)(D). This prohibition serves to insulate

plans from the influence or pressures of persons having direct or indirect relations with the plan. See McDougall v. Donovan, 552 F. Supp. 1206, 1216 (N.D. Ill. 1982). It serves to prevent "self-dealing transactions that have a high probability of corruption and loss of plan assets" as well as "sweetheart deals between fiduciaries and parties in interest." Marks v. Independence Blue Cross, 71 F. Supp. 2d 432, 437–38 (E.D. Pa. 1999) (internal quotation marks omitted).

Regarding the duty of loyalty, the statute provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

With respect to prudence, the statute provides that fiduciaries must discharge their obligations "with the care, skill, prudence, and diligence" that a prudent person acting in a like capacity and familiar with such matters would. 29 U.S.C. § 1104(a)(1)(B). The prudence standard derives from "the prudent person test as developed in the common law of trusts," but should be applied in a more stringent manner in light of "the special nature and purpose of employee benefit plans." Donovan v. Mazzola, 716 F.2d 1226, 1231 (9th Cir. 1983); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

Furthermore, in addition to liability for direct violations of the statutes, any fiduciary is liable for a co-fiduciary's breach of fiduciary responsibility unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

According to the well-pleaded facts alleged in Plaintiff's Complaint and described above, which Defendants have admitted by default, the Court finds that Defendants, as fiduciaries of the Plans:

1. failed to discharge their duties with respect to the 401(k) Plan and the Group Health Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the 401(k) Plan and the Group Health Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);
2. failed to discharge their duties with respect to the 401(k) Plan and the Group Health Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);
3. failed to discharge their duties in accordance with the documents and instruments governing the plans, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);
4. dealt with assets of the 401(k) Plan and the Group Health Plan in their own interest or for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1);
5. acted in the transactions described involving the Plans on behalf of a party whose interests were adverse to the interests of the Plans or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2); and
6. failed to retain records for both Plans, in violation of ERISA § 107.

Each Defendant is further liable for the breaches of the other, pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), in that they either (1) participated knowingly in an act of the other fiduciary, knowing such act was a breach of fiduciary duties; (2) failed to monitor or supervise the other

fiduciary and thereby enabled the breach; or (3) had knowledge of a breach by the other fiduciary and failed to make reasonable efforts under the circumstances to remedy the breach.

B. Damages

Defendants' actions have resulted in losses to the Plans, which Plaintiff is entitled to recover on behalf of the Plans, pursuant to ERISA § 409(a). 29 U.S.C. § 1109(a). Pursuant to Section 409(a), a fiduciary must restore to the Plans all losses that result from fiduciary breaches. The statute reads:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

"'Lost Earnings' is intended to approximate the amount that would have been earned by the plan on the Principal Amount, but for the Breach. Voluntary Fiduciary Correction Program Under the Employee Retirement Income Security Act of 1974, 71 Fed. Reg. 20,271 (Apr. 19, 2006). The amount of restitution due has been calculated to be $50,382.00 as of June 4, 2014. Therefore, Defendants must restore at least that amount, plus any additional lost earnings, plus post-judgment interest on any remaining unpaid balance of such amount, in accordance with 28 U.S.C. § 1961, from the date of judgment until paid in full. 29 U.S.C. § 1109(a); see also Dardaganis v. Grace Capital Inc., 889 F.2d 1237 (2nd Cir. 1989); Donovan v. Bierwirth, 754 F.2d 1049 (2nd Cir. 1985). The responsibility of one Defendant to make the Plan whole by paying the losses is joint and several with any other breaching fiduciary. In re Masters, Mates & Pilots Pension Plan & IRAP Litig., 957 F.2d 1020, 1023 (2d Cir. 1992) (citing 29 U.S.C. §

1105(a)(2)).

Having reviewed the claims asserted in the Complaint, (Doc. No. 1), and the evidence submitted in connection with Plaintiff's Motion for Default Judgment, (Doc. Nos. 9 to 9-2), the Court finds that Plaintiff's Motion should be **granted**.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff Thomas E. Perez's, Secretary of Labor, United States Department of Labor, Motion for Default Judgment, (Doc. No. 9), is **GRANTED**;

2. Judgment of lost earnings in the principal amount of **$50,382.00**, calculated as of June 4, 2014, plus any additional lost earnings, is entered against Defendants John W. Ulery and Comco Signs, Inc., jointly and severally;

3. Plaintiff shall be entitled to post-judgment interest at the statutory rate until the judgment is fully paid, pursuant to 28 U.S.C. § 1961;

4. Defendants are hereby permanently enjoined from violating the provisions of Title I of ERISA;

5. Defendants are hereby permanently enjoined from acting as a fiduciary, trustee, agent, or representative in any capacity to any employee benefit plan, as defined by ERISA;

6. Defendants are hereby removed from any position each holds as named or functional fiduciary to the Plans;

7. Defendants are hereby removed from any position as to the Plans. The Court directs that any participant interest Defendants may have in any existing or future

assets of the Plans be applied as an offset against the amounts that the Plaintiff has alleged are due to the Plans, as authorized by ERISA § 206(d)(4). The Court directs that the Plans' documents are hereby deemed amended to permit the distribution and offset of Defendants' participant interest;

8. Jeanne Bryant, Receivership Management, Inc., 783 Old Hickory Blvd, Suite 255, Brentwood, Tennessee 37027 is hereby appointed as successor fiduciary for the Plans; and

    a. The successor fiduciary shall terminate the Plans and distribute the Plans' assets;

    b. The successor fiduciary shall have all the rights, duties, and responsibilities of any fiduciary or trustee described under the Plans' documents or the applicable law, with respect to the successor fiduciary's duties;

    c. The successor fiduciary is authorized to delegate or assign fiduciary duties as appropriate and allowed under the law; and

    d. The successor fiduciary shall be entitled to receive reasonable fees and expenses for his or her services, payable from the assets of the Plans. Defendants shall be responsible for reimbursing the Plans for the entire successor fiduciary's reasonable fees and expenses with respect to services performed for the Plans. Prior to obtaining payment for services and expenses authorized pursuant to this judgment, the successor fiduciary shall file with the Court, with copies to all parties, invoices for such fees and expenses at such times and on such a schedule as the successor fiduciary, in his or her sole

discretion, deems appropriate.

9. The Court finds there is no just reason to delay the entry of this judgment, and therefore, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court directs the Clerk of Court to enter this Order as the final judgment in this action and to close the case.

Signed: November 23, 2015

*[signature]*

Robert J. Conrad, Jr.
United States District Judge